FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2016 APR 18 PM 12: 50

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DISTRICT

KIM MARX,

    Plaintiff,

vs.

Case No.: 3:16-cv-462-J-32MCR

BAKER COUNTY MEDICAL
SERVICES, INC., d/b/a
ED FRASIER MEMORIAL HOSPITAL,
and DENNIS MARKOS.

    Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

### NATURE OF THE ACTION

1.    This suit is brought pursuant to Section 510 of the Employee Retirement Income Security Act, 29 U.S.C. §1140, for interference with Plaintiff's rights under ERISA, and for unlawful retaliation in violation of the Family and Medical Leave Act, 29 U.S.C. Section 2615 (hereinafter FMLA).

### JURISDICTION

2.    The jurisdiction of this court is invoked pursuant to 28 U.S.C. 1331 and 1343(a)(3)(4), 29 U.S.C. §2617, 29 U.S.C. §1132, and pursuant to Section 510 of the Employee Retirement Income Security Act, 29 U.S.C. §1140.

### PARTIES

3.    Plaintiff, Kim Marx, is a citizen of the United States and the State of Florida, and resides in Marion County, Florida. Defendant, Baker County Medical Services, Inc., (d/b/a Ed Fraser Memorial Hospital) (hereinafter "BCMS") is licensed and doing business in the State of Florida, and at all times material to this complaint employed Plaintiff at its facility at 159 3rd

Street, Macclenny, Florida 32063 and employed in excess of 50 employees at this location. Defendant Dennis Markos is an Officer of Defendant BCMS and had the authority to direct Plaintiff's work and had authority to fire Plaintiff and had individual control over the ERISA covered self-insured health plan offered by BCMS.

## STATEMENT OF FACTS

4. Plaintiff worked for BCMS as Director of the Cardio-Pulmonary and Sleep Department from May 2008 until he was terminated on April 19, 2013. Plaintiff was a full time employee of Defendant. Defendant is a self-insured, not-for-profit, 25-bed, rural hospital located in Baker County, Florida. Dennis Markos is the Director of Baker County Medical Services, Inc.

5. Plaintiff was a participant in Defendant's self-insured healthcare insurance benefits plan. Plaintiff was required to pay premiums to receive the benefits of the aforementioned health insurance program. Plaintiff has a degenerative knee condition and was therefore in need of medical care and medications.

6. During Plaintiff's employment the CEO Mr. Markos attempted deny a health insurance claim made by Plaintiff's wife commenting that it was coming "out of his pocket." Mr. Markos abruptly demanded Plaintiff leave his office when Plaintiff challenged him for not paying his wife's medical bill when she broke her arm. Mr. Markos made numerous comments which evidence his animus towards employees who cost him money through the use of health insurance benefits.

7. Mr. Markos volunteered during Plaintiff's initial interview that he monitors all claims made through the health insurance program and that he was aware of what medications people are taking. The pharmacist for the hospital directly informed Plaintiff that he reported to Mr. Markos the medications which were dispensed to employees under the program. On another

2

occasion, Douglas Robey, Director of Maintenance and Safety and a very close confidant of Dennis Markos informed Plaintiff during a conversation Plaintiff initiated to discuss his need for knee replacement surgery, that Mr. Markos feels that the hospital insurance fund is his money. Subsequent to Plaintiff's termination but prior to July 15, 2014, Plaintiff was made aware of an incident wherein a Respiratory Thereapist witnessed CEO Dennis Markos have a conversation with Dell Lee, (the Interim Respiratory Manager at the time) wherein she stated to Mr. Markos that she intended to terminate an employee, Kim Bell. During the subsequent conversation Mr. Markos responded, "get that leach out of my building because she is costing me money with all the meds she needs with her health issues."

8. Plaintiff discussed with Mr. Markos on numerous occasions during his last year of employment the problems he was having with his knees. Plaintiff kept Mr. Markos up to date regarding his medical treatments as he received them. Plaintiff accompanied Mr. Markos on three separate trips to Boston to Meditech training facilities and there Plaintiff's knee problems were obvious as he had a hard time keeping up with the group of employees while on these trips, due to his limitations.

9. While Mr. Markos was generally aware of Plaintiff's medical treatments in the months leading up to his need for surgery, Plaintiff specifically informed Mr. Markos that he had exhausted all non-surgical options for his knees approximately two weeks prior to his termination. Plaintiff informed Mr. Markos of his need for knee replacement surgery and discussed the timing of his surgery and leave on April 7, 2013. Plaintiff informed Mr. Markos that he would be willing to come back early (prior to a full recovery or typical leave period for such a surgery) and use a wheelchair. During this period of time the facility was in the middle of a transition to an electronic medical records system which involved self-imposed deadlines and

benchmarks, so Plaintiff volunteered to come back prior to his medical recovery in a wheelchair since he was needed to assist with the new computer system. Mr. Markos stated "I need to talk to some of the other people involved and I will let you know in two weeks." Plaintiff's subordinates were also aware of his pending surgery as was the hospital's Medical Director, Mark Hardin DO.

10. Two weeks later, on April 19, 2013 Mr. Markos terminated Plaintiff stating "I have talked to people in and out of the Department and you need to leave now. Mr. Robey is waiting to escort you from the building." No further reason was provided for Plaintiff's termination.

11. Plaintiff was eligible for health benefits for his knee replacement surgery under Defendants' health insurance plan. Within the following week of Plaintiff's termination he was going to select a date for his surgery. Indeed, Plaintiff initially thought that the meeting set for April 19, 2013 was to discuss the date of his surgery and leave.

12. Upon information and belief Plaintiff asserts that subsequent to his termination, Mr. Markos provided different reasons to different employees of Defendant regarding the reason(s) he terminated Plaintiff.

13. Subsequent to his termination Plaintiff contacted Mr. Markos via email and requested the specific reason for his termination. Plaintiff never received a response to this inquiry.

14. Plaintiff was never provided any written discipline or provided any warning that his performance was unsatisfactory and that his job was in jeopardy prior to his termination. In short, Plaintiff was not provided any progressive discipline prior to his termination.

4

14.  Plaintiff was terminated immediately before he was eligible for surgery on his knee.

15.  To the extent, Defendants provided Plaintiff a reason for his termination Defendants' articulated reason for Plaintiff's termination is a mere pretext.

16.  In fact, Defendant retaliated against Plaintiff for attempting to use his benefits under the health insurance benefits plan, and terminated him in order to interfere with the use of those benefits. As a result, Plaintiff has suffered damages.

17.  The plan document which governs Plaintiff's health insurance entitled "Baker County Medical Services Health Benefit Plan" does not contain any provision which permits Plaintiff to appeal a termination of employment which has the effect of denying Plaintiff benefits under the plan. In other words the Plan provided no right to review or appeal for Plaintiff. Further, Plaintiff upon information and belief provides that Mr. Markos as owner and CEO of BCMS is authorized and is responsible for the final determination on whether a medical claim would be covered under the plan. Additionally, the plan document specifies that BCMS is the plan administrator, unless BCMS designated a person or a committee of person(s) to administer the plan. Further, the plan document expressly provided that a failure to provide a reasonable claim procedure that would yield a decision on the merits operates to deem the beneficiary to have exhausted the administrative remedies provided by the plan. As such Plaintiff has exhausted his administrative remedies and/or such an effort at exhaustion was futile under the circumstances.

## COUNT I

### SECTION 510 OF THE EMPLOYMENT RETIREMENT INCOME SECURITY ACT

18. Plaintiff hereby restates and realleges each and every factual allegation contained in Paragraphs 1 through 17.

19. Defendants terminated Plaintiff in order to interfere with his attainment of benefits under the health care insurance benefits plan and in order to retaliate against him for attempting to use these benefits. Plaintiff would not have been terminated but for this unlawful motive.

20. Plaintiff's termination was in violation of §510 of the Employee Retirement Income Security Act in order to deprive him of benefits under a certain employee welfare benefits plan within the meaning of the Employee Retirement Income Security Act.

21. As a result of the above actions, Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands relief in the form of equitable relief, including backpay up until he is reinstated and obtains the health insurance benefits for which he was entitled, and frontpay with interest thereon, reinstatement, and other injunctive relief, restitution of the amounts Defendants stood to gain in avoidance of Plaintiff's health care costs for his knee replacement surgeries and rehabilitation, attorney's fees and costs, prejudgment interest and any other such relief that Plaintiff may be entitled to under the law.

## COUNT II

### UNLAWFUL RETALIATION AND VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C. 2601 *ET SEQ.*

22. Plaintiff hereby restates and realleges each and every factual allegation contained in Paragraphs 1 through 17.

6

23. At all material times, Defendants has employed 50 or more workers within a 75-mile radius. Plaintiff was also employed within that 75-mile radius, had worked for the Defendants for at least 12 months, and had worked at least 1250 hours within the 12 months preceding his termination. The Plaintiff was therefore eligible for FMLA coverage.

21. In 2013, Plaintiff exercised his right to FMLA leave specifically to have knee replacement surgery.

22. The fact that Plaintiff asserted his FMLA rights was a substantial motivating factor in the Defendants' decision to terminate his employment. Plaintiff would not have been terminated but for Plaintiff's protected activity.

23. With regard to the unlawful retaliation described above, the Defendants acted willfully and in bad faith such that Plaintiff is entitled to liquidated damages in an amount equal to his lost wages.

24. As a result of the above actions, Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands a trial by jury on all issues so triable and relief in the form of economic damages, backpay and frontpay, equitable relief, reinstatement, prejudgement interest, attorney's fees and costs, liquidated damages and any other such relief that the Court deems just and proper.

Respectfully submitted,

/s/ Archibald J. Thomas, III
Archibald J. Thomas, III
Florida Bar No. 231657
archibald@job-rights.com
Samuel B. Kanupp
Florida Bar No. 0067216
samuel@job-rights.com
ARCHIBALD J. THOMAS, III, P.A.
4651 Salisbury Road, Suite 255
Jacksonville, Florida 32256
(904) 396-2322 (Telephone)
(904) 296-2341 (Facsimile)
TRIAL ATTORNEYS FOR PLAINTIFF

8